THOMAS BRACKEN *et al.*

*v.*

CHARLES COOPER *et al.*

1. TENANTS IN COMMON—*possession of one for all.* A party died, claiming real estate, having paid taxes on it for one or two years, and his executor treated it as belonging to the estate, and paid taxes on it so long as he managed the estate, and after he ceased to manage the estate, a son of the testator, who was one of his devisees, paid taxes on it for three years, and then put a tenant in possession, who remained there until another bought him out, who remained in possession up to the time of filing a bill for partition by the sons and devisees of the testator: *Held*, that the son of the testator who took possession of the land was, by reason of such possession and claim of title, to be taken as the legal owner of the land until some one appeared who could set up a better right, and he having confessed his possession to be for himself and his brothers, he and they, or their assigns, were, as respected themselves, to be treated as tenants in common of the land.

2. TAX TITLE—*by whom may be acquired.* A party having recognized and acted upon a claim of title through the will of one claiming to own it, and who devised it to his three sons, by purchasing the interest of one of the sons, under a sale on execution against him, and by purchase from the heirs at law of another of the sons, can not be permitted to set up a tax title acquired through a sale made for taxes to one who was at the time acting as the agent of one of the tenants in common, and for the benefit of all, to defeat the right of the other tenants in common to a partition. A tax deed acquired under such circumstances could have no greater effect than that of the payment of taxes on behalf of the tenants in common, unless it might be to stand as a security for the taxes and expenses paid.

3. TENANTS IN COMMON—*outstanding title acquired by one.* A tenant in common can not purchase in an outstanding title for his own exclusive benefit as against the interest of his co-tenant.

4. Where a mortgagee in possession of land died, claiming to own it, and, by his will, devised it to his sons, and a stranger, by purchase, became the owner of the interest of one of the sons, and tenant in common with the others, it was *held*, that such stranger could not purchase the equity of redemption of the mortgagor for his own exclusive benefit as against his co-tenants, but such purchase, if made, would enure to the common benefit of himself and his co-tenants, at their option.

APPEAL from the Superior Court of Cook county; the Hon. S. M. MOORE, Judge, presiding.

This was a bill in chancery, filed by Thomas Bracken, February 8, 1873, and cross-bill by John H. Bracken, October 16, 1873, against Charles Cooper, for partition of the west half of the south-east quarter of section 33, township 40, range 13, in Cook county, the Brackens each claiming an undivided one-third interest. Cooper claimed the whole. On hearing, the court below dismissed the bills, and the Brackens appealed to this court.

The more prominent facts are, that, in 1844, one Daniel Howell was the owner of the premises, and made a mortgage thereof to Bracken & Tuller to secure the payment of his promissory note to them for $1800, payable in eighteen months. The mortgage was assigned to Francis McGrath. After that, John Bracken (of the firm of Bracken & Tuller) died in 1848, leaving Thomas Bracken, John H. Bracken and Francis Bracken, his children and sole heirs at law, they all being minors at their father's death, of the respective ages of 17, 15 and 11 years. The executor of John Bracken paid the taxes on the land from Bracken's death until 1857, when he gave up the management of the estate. John H. Bracken then paid the taxes for the years 1857, 1858 and 1859. In 1859, he leased the land to one Hogan, who was to pay the taxes as the consideration of renting. Hogan remained in possession of the premises six or seven years, when one Jennings bought him out, and seems to have been in possession ever since. Some time after entering into possession under Hogan, Jennings took a lease from Cooper.

On the 22d day of November, 1866, a deed was executed

by the United States Marshal for the Northern District of Illinois, to Charles Cooper and John Cooper, professing upon its face to be in pursuance of a certain sale under an *alias* execution issued upon a judgment at the May term, 1857, of the United States Circuit Court, Northern District Illinois, in favor of John W. Russell and others, against John H. Bracken and another, and to convey the land in controversy.

Francis Bracken, one of the three heirs of John Bracken, died in 1862, leaving a widow, Cecilia J. Bracken, and there was born a posthumous child, which died in about a year, leaving her, Cecilia J. Bracken, his sole heir at law, and she for a while, by her agent, A. D. Taylor, took charge of the property, paying taxes. In August, 1872, Charles Cooper bought out her interest, having previously obtained a quitclaim deed of the interest of John Cooper.

On the 5th day of September, 1866, a tax deed of the land was executed by the sheriff to A. D. Taylor, in pursuance of a sale thereof to him, for the taxes of 1863, made on the 17th of August, 1864, a time when Taylor was acting as such agent of Mrs. Bracken in the management of and paying taxes on the land for her.

September 27, 1866, Taylor executed to Charles and John Cooper a quitclaim deed to the undivided one-third of the land. A. D. Taylor executed to Mrs. Cecilia Bracken a quitclaim deed to two undivided thirds of the land, of the date of January 20, 1871, the deed reciting that it was given to correct a mistake in a former deed to her, the date whereof is not given.

October 4, 1872, Mrs. Bracken executed a quitclaim deed to Charles Cooper of two undivided thirds of the land, the deed reciting it was the intention to vest in Cooper all the title acquired by Mrs. Bracken by the deed from Taylor of January 20, 1871.

On the 11th day of October, 1872, Daniel Howell and wife executed to Charles Cooper a quitclaim deed of the land.

In 1859, John H. Bracken made an assignment to Jacob Harris, under the Insolvent Debtors' act, and Harris shortly

after that time made a sale of the premises, at assignee's sale, to George A. McCord, for a nominal sum.

Mr. W. T. BURGESS, for the appellants.

Messrs. COOPER, GARNETT & PACKARD, for the appellees.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

Although there may be a failure here, in the exhibition on the part of the complainants, of a complete legal title, we do not think that, under the facts disclosed, this defendant Charles Cooper is entitled to gainsay the claim of interest, and resist the partition sought. The destruction of the public records of Cook county by the fire of October 9, 1871, precludes, for the most part, all documentary evidence.

John Bracken evidently died claiming this property. Judge Hugh T. Dickey, one of the executors of the will of John Bracken, testifies, "that the will devised all the property to the widow and children, and it was assumed that the property belonged to the estate, and so treated by me in dealing with the estate." He found that John Bracken had been paying the taxes on it for one or two years, and the witness continued to pay the taxes on it from the time he took charge of the estate until he gave up the management of it, in 1857. It is his impression, though not a distinct one, that he procured from McGrath a reassignment of the mortgage. A suit in McGrath's name, for a foreclosure of the mortgage, had been carried to a decree. The testimony renders it probable that the assignment to McGrath was but in trust for Bracken. After Judge Dickey ceased to have charge of the land, John H. Bracken paid the taxes for three years, and then put Hogan in possession of the land as his tenant, whose possession remained undisturbed and continued until Jennings bought him out, in 1865 or 1866, and Jennings has remained on the land ever since; so that John H. Bracken, by reason of his possession and claim of title, is to be taken as the legal owner of the land until some one appears who can set up a better right. He confesses

his possession to be for himself and his two brothers, Thomas and Francis, and Francis' title having been acquired by Cooper, the three, John H., Thomas, and Cooper, are, as respects themselves, to be considered the owners and tenants in common of the land.

It is this claim of title derived from John Bracken, deceased, which appellee Cooper has constantly recognized and acted upon. It was the undivided one-third part thereof which he attempted to acquire by purchase under execution on a judgment against one of the co-heirs, John H. Bracken, that being all the interest which John H. Bracken had in the premises. It was another undivided one-third of the same interest which he purchased from another of the co-heirs, Mrs. Cecilia J. Bracken, on the 31st of August, 1872, for the expressed consideration of $8000, her interest quitclaimed being thus described in the deed taken by Cooper from her: "The interest of said party of the first part in said property being an equal or undivided one-third part thereof, acquired by said party of the first part as widow and sole heir at law of Francis Bracken, deceased." It was two-thirds of the same interest which Cooper procured Mrs. Bracken to quitclaim to him October 4, 1872, and it was an undivided one-third of the same interest which A. D. Taylor quitclaimed to Cooper September 27, 1866, Taylor having previously obtained a tax deed thereto.

No judgment or execution under which the marshal's deed to Cooper was made, is attempted to be shown in evidence, and it is not even pretended that any title to the land was acquired through this marshal's deed, appellee's counsel expressly admitting that none was thereby acquired.

Upon the death of Francis Bracken, in 1862, and that of his posthumous child about a year after, whereby the one-third interest of Francis Bracken descended to his widow, Mrs. Cecilia Bracken, she took charge of the property, or rather her uncle, A. D. Taylor, for her, took the charge and whole management of her interest in the property. While thus acting as the agent of Mrs. Bracken, one of the co-tenants, Taylor, suffered the land to be sold for the taxes, and obtained a tax

deed to himself to the whole land. It sufficiently appears, from the evidence, that, in so doing, Taylor acted for the benefit of the heirs of John Bracken, and in their interest, and not adversely to them. Taylor says that it was understood between him and Mrs. Bracken that, when he got the tax deed, he was to make her a quitclaim deed, and that he was ready to make one to Thomas Bracken on his payment of his share of the cost of the deed. Cooper only paid Taylor for the latter's quitclaim deed to one-third, the one-third share of the former taxes which had been paid by Taylor—the deed evidently having been made to Cooper as the representative of the one-third John H. Bracken interest. Taylor says the quitclaim deed from Mrs. Bracken to Cooper, of October 4, 1872, was intended to be for one-third; why it was given for two-thirds, does not satisfactorily appear. The evidence shows that Cooper did not pay anything for it. Under the circumstances, the tax deed of Taylor, agent as he was, amounted to nothing, either in his hands or those of Cooper, as against John H. and Thomas Bracken. It should not be entitled to any greater effect than that of a payment of the taxes on behalf of the tenants in common of the land, unless it might be to stand as a security for the taxes and expenses paid. *Choteau* v. *Jones*, 11 Ill. 300; *Brown* v. *Hogle*, 30 id. 119; *Voris* v. *Thomas*, 12 id. 442; and see *Page* v. *Webster*, 8 Mich. 243; *Administrators of Downer* v. *Smith*, 38 Vt. 464.

There is the further claim of right to the land in Charles Cooper, arising out of the execution of a quitclaim deed thereof to him on October 11, 1872, by Daniel Howell, the mortgagor who made the mortgage to Bracken & Tuller, of December 16, 1844. We think that, at the time of getting this quitclaim deed, Cooper must be considered as a tenant in common with Thomas Bracken, and that, so far as the interest of the latter is concerned, Cooper could not purchase in an outstanding title for his own exclusive benefit. It is insisted, to the contrary, that the Coopers acquired a *color* of title to the whole land under the marshal's deed, and that, having done so, Charles Cooper had the right to buy in the supposed claim

of one heir at law without thereby becoming tenant in common with the other heirs at law, and thereby estopped from purchasing in, for his own benefit, the paramount title; that he must be permitted to proceed to the perfection of the title which he supposed he acquired at the marshal's sale.

The Coopers did not acquire, nor did they suppose they acquired, by the marshal's deed, a color of title to the whole land. All the evidence is that way. As Charles Cooper swears, "the deed showed that John H. Bracken's interest had been sold." In Charles Cooper's answer to the original bill, filed November 5, 1873, by counsel who had been his attorneys in respect to this land since 1866, and may be presumed to know just what the extent of his claim to the property was, after setting out the proceedings terminating in the deed, he says, "that, in those proceedings, defendant believed he was acquiring some interest in said land under John H. Bracken;" and again, in his answer to the cross-bill, filed January 22, 1874, in reference to those proceedings, he says that, in all the proceedings aforesaid, he was led to believe, and did in fact believe, that said John H. Bracken *had some interest* in said premises. It is true, that, afterwards, upon a change of counsel, an amendment was made by the substitution of the word "title" in place of "some interest."

John H. Bracken's interest was an undivided one-third, as one of the three children and heirs of John Bracken. The nature and extent of this interest must have been known to the Coopers, if they took any pains, as it is to be supposed they did, to ascertain what was the interest they levied upon and purchased. Upon getting the marshal's deed in 1866, the Coopers settle with Taylor, for one-third of the back taxes, and he gives them a quitclaim deed for one-third of the land. Then Cooper and Mrs. Bracken, she holding the Francis Bracken one-third interest, lease jointly to Jennings, who was already in possession under Hogan, to whom John H. Bracken had leased the property in 1859, and the taxes are paid afterward out of the rents.

In August, 1872, Cooper purchases from Mrs. Bracken her

undivided one-third interest, described in the deed·as the un-
divided one-third interest inherited by her from Francis Bracken.
Oct. 21, 1872, Cooper, for the first time, pays all taxes on the
land, and this suit was commenced February 8, 1873.   This in-
stance of paying all the taxes on the land would seem to be the
only evidence in the case tending in the direction of any claim
by Cooper to the whole land.

Cooper's declared claim of interest was but of an undivided
one-third.   Mr. Honore, who was at the time engaged in the
real estate business in Chicago, testifies, that in the summer
of 1872, Cooper called to see him about the property; ·that
Cooper told him he owned an undivided one-third of it, and
that Thomas Bracken and Mrs. Bracken owned the other two-
thirds, and he left with witness his interest to sell, giving the
price and terms.   Mrs. Bracken testifies that she did not un-
derstand Cooper as claiming her interest in the land—that she
always understood he owned a third interest in the land; she
supposed it was John's.   There is other testimony of like char-
acter, all showing satisfactorily that the claim of interest under
the marshal's deed was but of an undivided one-third, and that
there was a recognition, on the part of Cooper, of the third
interest of Thomas Bracken.

We are of opinion that Cooper must be regarded as a tenant
in common with Thomas Bracken—that they were not antago-
nistic in their claims and interest.   Their common title was
one derived from John Bracken, deceased, being a claim of
right as mortgagee under a mortgage of the land.   Under such
circumstances, the obtaining by Cooper, on October 21, 1872,
of a quitclaim deed from Howell, the mortgagor, ought, in
equity, we think, to inure for the common benefit of himself
and Thomas Bracken, his co-tenant.

We consider the case as brought within the rule which pro-
hibits one tenant in common from buying in an outstanding
adverse title for his exclusive benefit, and which holds it to inure
to the benefit of his co-tenants, at their option.   *Van Horne* v.
*Fonda,* 5 Johns. Ch. 388; *Rothwell* v. *Dewees,* 2 Black, 619;
*Busch* v. *Huston,* 75 Ill. 343; 1 Washb. Real Prop. 588.   It

is contended by appellee, that this principle does not apply here, because the interest of Cooper, as tenant in common, did not accrue under the same instrument, or act of the parties, or of the law, as that of Thomas Bracken. It is said in reference to this subject, in the note to the leading case of *Keech* v. *Sandford*, 1 Leading Cases in Equity, on pages 74–5: " While admitting this principle to be well settled as applicable to joint tenants and co-parceners, tenants in common probably are subject to this mutual obligation only when their interest accrues under the same instrument or act of the parties or of the law, or where they have entered into some engagement or understanding with one another; for persons acquiring unconnected interests in the same subject by distinct purchases, though it may be under the same title, are probably not bound to any greater protection of one another's interests than would be required among strangers." This seems to have been recognized and adopted as a proper qualification of the doctrine as applied to tenants in common, in the case of *Roberts* v. *Thorn*, 25 Tex. 728. In *Rothwell* v. *Dewees*, *supra*, the Supreme Court of the United States applied the general rule, as first above stated, to the case of a purchase of an outstanding interest by a husband of one of the tenants in common, who held the property as heirs of a common ancestor, and it was there recognized and considered that the rule was based on a community of interest in a common title, which created such a relation of trust and confidence between the parties, that it would be inequitable to permit one of them to do anything to the prejudice of the other, in reference to the property so situated. We do not find sufficient authority or reason to induce us to adopt the qualification of the doctrine, as applied to tenants in common, that their interest should accrue under the same instrument or act of the law. We regard the rule as founded upon the duty which the connection of the parties as claimants of a common subject creates, and not as dependent upon the accidental circumstance whether the relationship of the parties be constituted by the same instrument or act of the parties or of the law, or not.

230      BRACKEN *et al.* v. COOPER *et al.*      [Sept. T.

Opinion of the Court.

This principle, of course, does not extend to John H. Bracken further, at least, than may respect the possession which he gave to Hogan by his lease to him in 1859, which has ever since been held by Hogan and those under him, and never surrendered back. But, as respects John H. Bracken, Cooper, by this quitclaim deed from Howell, the mortgagor, acquired, at the most, no more than an equitable right to redeem, which can be asserted only in a court of equity. Cooper is not seeking to redeem, and has made no offer to do so. And the right of Cooper even to redeem, were that the question involved, is by no means clear.

The mortgage was given by Howell, Dec. 16, 1844, to secure the payment of $1800, eighteen months after date, with seven per cent per annum interest. Howell, himself, testifies, that it was but a few months after the execution of the mortgage when he was convinced that he could not pay the debt, and, consequently, felt no interest in the land, and paid no attention to it from that time on; that another reason for his paying no further attention to it was, that he thought it was mortgaged for more than it was worth; that in October, 1872, when Cooper came to see him and made inquiry, he told Cooper he mortgaged the land to Bracken & Tuller, and that was the last of his having anything to do with it; that he told Cooper he was willing to give him a quitclaim, if it would be of any use to anybody; that he considered he had no interest that would be jeopardized by giving Cooper a quitclaim, and gave him a quitclaim deed; that he told Cooper he would cheerfully sign a quitclaim deed; that Cooper did not pay him any consideration—the deed itself expresses a consideration of one dollar. It would seem under such and all the other circumstances of the case, after so great a lapse of time, inequitable for Cooper to assert against John H. or Thomas Bracken a right to redeem, which Howell himself, the mortgagor, confessedly had for such a length of time, given over all purpose of asserting.

After so marked evidence of abandonment by the mortgagor of the mortgaged premises for the mortgage debt, and so long a possession and exercise of a claim of right thereto by the

mortgagee and those under him, liberal presumptions may well be indulged in favor of the support of the claim of right of the latter, and of there having been a relinquishment of the right of redemption or an extinguishment of it by the foreclosure proceedings. It is in evidence that those proceedings were carried to a decree. From the destruction of the records by fire and the length of time, there is an inability now to show what was the nature of the decree. It might have been one of strict foreclosure. Had there been possession by the mortgagee after condition broken for twenty years, there would have arisen a presumptive bar of the equity of the mortgagor. A presumption would have been entertained, that the mortgagor had deserted or released his equity of redemption. The neglect to pursue a right of redemption, as Lord Commissioner GILBERT observed in *Ord* v. *Smith,* Sel. Cha. Ca. 11, is evidence of a dereliction of all property in the pledge. Matthews' Presumptive Evidence, 345–6–7. There was here an actual possession of some fourteen years after condition broken, and, doubtless, would have been for more than twenty years had the land been improved, instead of wild and unimproved, as it was. There must have been payment of taxes under claim of title, by the mortgagee and those under him, for more than twenty-five years after condition broken. It was said by this court in *Kenyon* v. *Shreck,* 52 Ill. 383, that the right of a mortgagor to redeem, after condition broken, is a purely equitable right, which can be asserted only in a court of equity, and when its assertion would be plainly inequitable, that court will withhold its aid. See *Beach* v. *Shaw,* 57 Ill. 17.

Some stress is laid upon the supposed rights of Tuller, McGrath, and McCord. John Bracken and Tuller were partners, together. The mortgage was given by Howell to Bracken & Tuller, on the purchase from them of a stock of goods. It is a fair presumption, from the circumstances, Tuller not appearing ever to have claimed any interest in the note and mortgage, that they had been turned over by him to Bracken, in the settlement of the partnership affairs.

It has been already remarked, that the testimony renders it

probable that the assignment of the mortgage to McGrath was but in trust for Bracken. Harris, the assignee in insolvency of John H. Bracken, appointed in 1859, was made a party, and states, in his answer, that, as assignee, he sold the land for some trifling sum to McCord, but did not further act, and that neither McCord nor any of the creditors of Bracken had ever paid any attention to the matter since, and he himself disclaims any interest. This is all that appears in the case as respects McCord. It does not appear that any deed was made to him, nor even that he paid the purchase money.

No claim of interest in the property appears ever to have been made by either of these parties; and it seems enough that Cooper does not claim under Tuller, McGrath, or McCord, or in any way connect himself with either of them. There does not appear enough of interest in them to admit the objection that they were not made parties.

We are of opinion that partition ought to have been made, giving to each of these parties, John H. Bracken, Thomas Bracken and Charles Cooper, one-third, subject to an account for rents received and taxes paid.

The decree is reversed, and the cause remanded for further proceedings in conformity with this opinion.

*Decree reversed.*

Mr. JUSTICE WALKER: I am unable to concur in the decision or reasoning in this case, and think that the decree of the court below should be affirmed. Fourteen years' possession of the mortgaged premises by the mortgagee should not raise a presumption of foreclosure or release by the mortgagor. There are other rules announced in the opinion to which I do not assent.