THOMAS J. TOWERY v. MATTIE HENDERSON ET AL.

(Case No. 4030.)

1. DELIVERY OF DEED.— One who contracted verbally for the purchase of land testified that he went with the owner of the land to a lawyer's office and had the deed drawn up, when the owner delivered it to him, and then he handed it back to the owner that he might acknowledge it for registration, when both went to hunt an officer for that purpose, the note for purchase money having been already delivered to the vendor of the land. The vendor refused afterwards to acknowledge the deed. *Held*, the question of delivery of the deed *vel non* was for the jury, the evidence being conflicting; but if the facts occurred as above stated there was a delivery of the deed.

2. TENANCY — ESTOPPEL.— One who assumes after occupancy, without contract, the relation and rights of tenant to the owner of the land occupied, may be

---

[1] The *remittitur* was filed.

treated as a tenant, and will be estopped from afterwards denying that the relation of landlord and tenant existed. Following Word *v.* Drouthett, 44 Tex., 371.

3. OUSTER — PURCHASE OF OUTSTANDING TITLE.— The taking of a deed by one of two co-tenants to the entire property and placing the same on record is not an ouster of the co-tenant, nor can it be construed into notice of a claim to exclusive and adverse possession.

APPEAL from Lamar. Tried below before the Hon. R. R. Gaines.

Trespass to try title by Mrs. Mattie Henderson, joined by her husband, Travis Henderson, and by Travis Henderson as guardian for the minor Ella Thomas, to recover from one of the appellants, Thomas J. Towery, a lot of ground in the town of Paris, Lamar county. The plaintiffs gave bond and sequestered the property. The plaintiffs claimed title by virtue of a deed from H. D. Woodsworth by J. R. Woodsworth, attorney in fact, dated December 1, 1874. (This was a quitclaim.)

April 2, 1877, defendant filed an amended answer pleading the statute of limitations of ten years, and claimed the property in right of his wife. He claimed, also, that before the plaintiffs' purchase from Woodsworth, his wife had purchased whatever interest Woodsworth may have had, and that of this purchase plaintiffs had notice when they bought.

Plaintiffs amended by averring that they had a perfect chain of title from the government down to Woodsworth and from Woodsworth to themselves. They further pleaded in estoppel that on the day of their purchase from Woodsworth, and before that, the defendant and his wife had both admitted that they had no title to the land, and had tried to purchase from Woodsworth; and that plaintiffs, relying on these acts and admissions, had bought and paid for the land, which they would not have done but for such admissions.

April 15, 1878, Mrs. Frances J. Towery (having been made a party defendant upon her own motion) filed her answer, and, adopting so much of the pleadings of her co-defendant as asserted title in her by limitation, averred that in 1850 her father, John Johnson, bought the lot in controversy from H. D. Woodsworth and went into actual possession, inclosed the lot, and used and claimed it openly and notoriously against all the world until his death in 1852; that after the death of her father, John Johnson, she and her co-defendant took immediate possession of the property, and by themselves, their agents and tenants, had held the peaceable and adverse possession thereof until the filing of this suit, and then pleaded the statute of

limitations of ten years. They also pleaded the peaceable, adverse and exclusive possession of the property for more than ten years, and the non-entry of plaintiffs or their vendor, said Woodsworth.

Plaintiffs filed exceptions to the last pleading of defendants, which do not appear to have been acted on by the court.

October 16, 1879, the cause was tried before a jury, and judgment rendered for plaintiffs. Defendants appealed *in forma pauperis.*

The title of plaintiffs was as follows: 1st. Patent to Larkin Ratten. 2d. Deed from Ratten to G. W. Wright. 3d. Deed from Wright to Woodsworth. 4th. Quitclaim from Woodsworth, by J. R. Woodsworth, attorney in fact, to plaintiffs, dated December 1, 1874; consideration recited $250. 5th. Power of attorney from H. D. Woodsworth and wife to J. R. Woodsworth, authorizing him to sell any lands they might own in Texas.

The evidence for the defense was substantially as follows: John Johnson (the father of defendant Frances and the maternal grandfather of plaintiffs) had possession of the lot in 1850, claiming to have purchased it from H. D. Woodsworth, who then lived in Paris, but moved to Missouri in 1852. Johnson had the lot inclosed, and used it in connection with a hotel which he owned up to his death, in 1852, when the hotel and the lot were occupied by the defendants until the hotel was partitioned between defendant Frances and the mother of plaintiffs. The lot was not partitioned, as there was no written title; but defendants kept possession of the lot until 1854, when they placed one Smith in possession, with the agreement that he should hold it for them, and have the use of it for paying the taxes. Defendants meanwhile moved away, and were absent until 1867. Smith held the lot for some time, when he turned it over to one R. B. Francis, who held it for defendants on the same terms until his death, and afterwards his family continued to hold it on the same terms until the return of defendants in 1867, when it was restored to them. They immediately took possession, built a house upon it, and lived on it until the filing of this suit, February 15, 1875. These facts were proven substantially by several witnesses.

Mrs. Towery, in her testimony, stated that they took possession as heirs of her father, and that it was held by them for herself and her sister, the mother of plaintiffs. One witness stated that Johnson, while in possession of the lot, told him he had bought it from Woodsworth and gave him $25 for it.

H. S. Bennet, for defendants, testified that in 1860 he tried to buy the lot from Francis, who then had possession, but Francis told him he could not sell; he was holding as agent of another person.

W. Babcock testified that in 1862 he called on Francis to buy some lots. Francis showed him a number of lots, and among them the lot now in suit. Francis offered to sell him this lot, and his best recollection is that Francis claimed it as his own. Francis offered him another lot, which he said he did not own, but was authorized to sell.

Concerning the purchase of the lot from Woodsworth in 1874 the testimony was conflicting.

Defendant Towery testified that he had heard that Woodsworth set up some claim to the lot. In 1874, when J. R. Woodsworth came to Paris, witness went to see him to buy whatever title he might have in order to quiet his (defendant's) title and avoid a law suit; the property was worth $800. Witness offered $200, and Woodsworth agreed. · They went to a lawyer's office; had the deed drawn up. It was signed by W. and delivered to witness. A note for $200 and a deed of trust was signed by witness and delivered to W. Witness then handed the deed to W. in order that he might acknowledge it for record, and they started together to the clerk's office for that purpose. On the way they met Travis Henderson, one of the plaintiffs. Witness introduced Henderson to W. Henderson took W. aside and had a talk with him. W. after that refused to acknowledge or return the deed, but kept it and the note and deed of trust. Woodsworth testified by deposition. He agreed with Towery as to the making of the contract of sale,— the price,— going to the lawyer's office,— the signing of the deed by him,— the signing and delivery of the note and deed of trust to him, but said he did not deliver the deed to Towery, because he discovered in the office that Towery was trying to swindle him. When he conveyed to Mrs. Henderson, he left with her or her attorneys the note and deed of trust of Towery.

The attorney testified to the visit to his office, the drawing up and signing of the papers, and their leaving together for the clerk's office; but can't remember who had the deed when they left.

· Travis Henderson testified that he tried to get Towery to buy from Woodsworth in connection with him, Towery to pay half for his wife, and he to pay half for his ward, Miss Thomas. Towery refused, and he would then have no more to do with it, and went away, but told Woodsworth that his wife wished to see him. When he came back he found that his wife had bought the property for herself and Miss Thomas. She paid him more money for it.

Mrs. Henderson testified that she knew that Towery and wife lived on the property and had claimed it, but she learned from her husband

and Mr. Woodsworth that they were trying to buy it from W. She was therefore induced to believe they had no title, and bought. She would not have done so but for this information. She paid a full and fair price for it. Before that time, her sister, Ella Thomas, and Mrs. Towery, had claimed the lot, but what she learned from her husband and Woodsworth induced her to believe that Towery was trying to ignore the claim of his wife and of Ella Thomas. She did not speak to Towery about it.

Mrs. Towery testified that she was present (at the law office) when the deed, etc., was made, and she told Woodsworth that she claimed the lot and would defend her title, but she was willing to pay $200 rather than have a lawsuit. She did not consider that Woodsworth had any right to the property, and did not relinquish any right of her own. She was only trying to buy her peace and avoid litigation, but she had never held or claimed against the rights of Ella Thomas, and always intended that she should have her part of the property.

The assignments of error are indicated by the opinion.

*Bennett, Ballinger & Bennett*, for appellants.

*Hale & Scott*, for appellees.

DELANY, J. COM. APP.— Our opinion is that there is error in the record for which the judgment should be reversed.

The first assignment of error, we think, is well taken. What constitutes a delivery of a deed is a matter of law. Whether there was a delivery in this case was a question of fact. If the testimony of Towery is to be believed, which was a question for the jury, we incline to the opinion that there was a delivery of the deed. On the other hand, the testimony of the witness Woodsworth is indefinite at the very point where the utmost clearness is desirable and necessary. He admits that he made the contract; that the parties went to the office of Matthieson to have it reduced to writing; that the deed was written in accordance with their directions, and that he signed it, but says that he did not deliver it. This may mean either that he did not hand the deed to Towery, as the latter testifies he did, or that his acts at the time did not amount in law to a delivery of the deed. We do not wish to comment on the evidence, but we find nothing in the record pointing to an understanding between the parties that the deed was not to become operative until it was acknowledged. We are by no means certain that the jury may not have been influenced by this part of the charge.

The second assignment questions the following clause of the charge: "If R. B. Francis took possession of the lot . . . without the knowledge or actual consent of Towery, and with or without any contract for the occupation of the lot as tenant of Mrs. Towery and Mrs. Thomas, made by them or their husbands, or some duly authorized agent, there would be no privity between Francis and Towery and wife, and the occupation of Francis would interrupt the running of the statute of limitations."

This, in our opinion, was error. It does not clearly appear when Francis took possession; but it does appear that he was in possession in 1860. Johnson, the father of Mrs. Towery, was in possession in 1850. If ten years elapsed between the time when Johnson took possession and the time of the entry of Francis, the title of Mrs. Towery and her sister by limitation was complete. But if the entry of Francis was before the year 1860, then the question to be determined is whether Francis took possession as the tenant of the defendants and Mrs. Thomas. And in our opinion there can hardly be any doubt that he did.

There seems to be no doubt about the tenancy of Smith, the predecessor of Francis. He received the property from Towery and wife, to hold upon certain terms. He turned it over to Francis, and Francis received it to hold for Towery and wife upon the same terms. Can there be a doubt that this would make him their tenant? If they had returned a month or a year after he took possession, and had demanded the property, he must have surrendered it, just as his family surrendered it, after his death, in 1867.

We quote some remarks of Mr. Justice Moore upon a case not wholly like this, but which will apply here: "From the instructions the jury were authorized to infer that the relation of landlord and tenant could only be brought about or created by a contract either written or parol. . . . Evidently, in many instances, the owner may claim that the occupant holds as his tenant, although there has been neither a written nor a parol contract to this effect. If one has assumed the rights of a tenant, the owner may so treat him, and though there is no contract between them he will be estopped from denying the tenancy." Word v. Drouthett, 44 Tex., 371.

Although these remarks refer to the owner and the occupant of land they are equally applicable to the case before us. For we must suppose that Smith, the preceding tenant, acted in good faith towards his landlords, and that Francis could not have obtained the possession without an agreement to become their tenant.

In our opinion the third assignment, also, must be sustained. The

court directed the jury to find against the defendants, if during the occupancy of the lot they attempted to purchase it from H. D. Woodsworth, in order to hold it as their own property, or either of them, in exclusion of the claim of Mrs. Thomas or Ella Thomas; that such conduct would be inconsistent with their plea of adverse possession.

It must be kept in mind that this attempt to purchase the lot was made twenty-four years after Johnson, the ancestor of the parties to this suit, had taken possession of it. It is not easy to see how this purchase or attempted purchase could be inconsistent with the plea of adverse possession. If Towery and wife felt any apprehensions about the claim of Woodsworth, it was not unreasonable or improper that they should try to buy it in. Such a purchase could not harm Ella Thomas, inasmuch as the defendants had always recognized her rights, at least up to the da.e of the attempted purchase. "Merely taking a deed, by one of two co-tenants, from a stranger, of the entire estate and putting the same on record, is not an ouster of his co-tenant, nor a notice of a claim to exclusion and adverse possession." 3 Washb. on Real Prop. (4th ed.), p. 142.

The only effect of their open repudiation of the rights of Ella Thomas would have been to put the statute of limitations into operation against her, if she had not been protected by the disability of infancy.

In the present state of the record, we need hardly notice the fourth assignment of error, except to say that, for the purpose of barring the right of entry of Woodsworth, under the fourteenth section of the act of limitations of 1841 (Pasch. Dig., 4631), we doubt whether the defendants could connect their possession with that of Johnson, their ancestor, because he had not been in possession five years at the date of his death. When the case goes back the defendants might, perhaps, present that question by amending their pleadings, but of this they will judge for themselves.

The questions arising under the fifth assignment have already been sufficiently discussed.

For the errors indicated above, our opinion is that the judgment should be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion approved November 2, 1883.]