## JAMES BOYD

*v.*

## JOHN W. BOYD *et al.*

*Opinion filed October 24, 1898.*

1. LIMITATIONS—*possession of one co-tenant under common title not presumed to be adverse.* The possession of land under the common title by one co-tenant will not be presumed to be adverse to the others, but will ordinarily be held to be for the benefit of all.

2. SAME—*interests of co-tenants need not accrue under the same instrument.* In order that the possession of land by one co-tenant may be held to be for the benefit of all, it is not necessary that the interests of the co-tenants shall accrue under the same instrument or act of the law.

3. SAME—*acquiescence in possession of one co-tenant—when not a bar.* Acquiescence by one co-tenant in the possession of land by another co-tenant is not evidence that such possession was adverse, where it appears the party whose acquiescence is relied upon had no knowledge of his rights in the land.

APPEAL from the Circuit Court of Pike county; the Hon. JEFFERSON ORR, Judge, presiding.

A. G. CRAWFORD, for appellant.

MATTHEWS, HIGBEE & GRIGSBY, and DOOCY & BUSH, for appellees.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

This was a proceeding in partition, begun October 5, 1889, by certain heirs of James Boyd, who died intestate in June, 1863, the owner of certain lands, leaving a widow but no children. He left surviving him a father, John Boyd, two brothers, Robert and William Boyd, one sister, Sally A. Crook, and the children of a deceased brother, John Boyd, who died in the army, intestate, April 2, 1862, among which children was appellant, then seven years old, and the other minor children, for which minors Robert Boyd was appointed guardian about the year 1869, in

the State of Indiana, where he and they at the time re-
sided.   The record is not clear, but it is understood that
he removed from Indiana to Pike county, Illinois, where
the land in controversy is situated, bringing these minor
children with him, about that time.   Whether he removed
to Illinois to look after his interest in the estate of his
brother James as well as that of his wards is not stated,
neither is it stated whether any letters were taken out
on the estate of James Boyd.   The widow inherited one-
half of the real estate, the father two-twelfths, the three
brothers and a sister one-twelfth each.   The maiden name
of the widow was Williams.   She, after marrying a man
by the name of Smith, who died, married John Brawley,
who survived her, she dying intestate February 14, 1868,
without children.   Brawley inherited one-half of her es-
tate which had not been conveyed by her before her
death, and the remainder passed to her brothers and sis-
ters.   The only real defendants in this case, as stated by
both parties, are John W. and David Boyd.

The bill alleges that James Boyd died seized in fee of
the south-west quarter of the north-west quarter of sec-
tion 5;  the south half of the north-east quarter and the
west half of the south-east quarter of section 6; also, the
east half of the south-west quarter and the north-west
subdivision of the south-west quarter of section 6, said to
contain fifty-eight acres, all in township 5, range 6, west
of the fourth principal meridian, in Pike county, Illinois.
The answer of defendants admits that James Boyd died
seized in fee of all of said lands except the north one-
third of the east half of the south-west quarter and the
south two-thirds of the east half of the south-west quar-
ter of said section 6, which it is alleged he never owned,
but that it was owned by one James R. Dutton, who con-
veyed the same to the defendants June 4, 1887.   It avers
that the widow of James Boyd, and her surviving hus-
band, John Brawley, conveyed certain of the lands, which
title by *mesne* conveyances came to the defendants; that

John W. Boyd owns in fee simple, with a perfect chain
of title, certain of said lands, and that the lands of which
James Boyd died seized are held in fee by John W. and
David Boyd and two others, who afterwards conveyed
to them; that complainants do not now have, and never
had, any interest in said lands, etc. The answer does not
set up the Statute of Limitations.

It is observed that the answer admits James Boyd
was seized in fee, at the time of his death, of all of said
lands except the east half of the south-west quarter of
section 6. The evidence shows, as to this tract, that
James Boyd was in possession of it at his death under
claim of deed from the swamp land commissioners; that
his widow took possession thereof immediately after his
death; that she conveyed an undivided one-half of it Jan-
uary 14, 1864, and that John Boyd, the father of James
Boyd, deceased, and William Boyd, the brother, quit-
claimed the east half of the south-west quarter of section
6, November 24, 1868, to Robert Boyd, who took posses-
sion, and died in 1887 or 1888. John W. Boyd now claims
to own the north one-third of the east half of the south-
west quarter of section 6, and David Boyd the south
two-thirds of the same tract, both claiming title, as is
understood, through judicial sales made to the latter in
1887, on sale of interest of one Kern, whose interest there-
in does not appear or how he acquired it; to the former,
John W. Boyd, through a sheriff's sale of interest of one
Purcell, who by *mesne* conveyances had acquired the in-
terest of the widow. This latter deed was made in 1881.

In this proceeding these appellees do not claim title
to the said tract through their father, but through these
deeds, a deed from one Dutton of June 4, 1887, and the
Statute of Limitations. The title to the other tracts they
claim by adverse possession for twenty years; and by
color of title, possession and payment of taxes for seven
years, etc. This defense was not set up in the answer,
and leave is asked to file an amendment setting up such

defense here, on leave taken in the court below at the time of trial but not made. The case seems to have been tried below as if this defense was interposed, and, as we understand the effect of the request of the appellant, the case is so to be heard here.

It appears that in the year 1868 one Purcell and Robert Boyd obtained a deed from the heirs of James Boyd, deceased, other than these complainants, to the land now under consideration; that on September 20, 1871, Purcell, who in the meantime had acquired the undivided one-half interest of Robert Boyd, conveyed by quit-claim deed to John W. and David Boyd, the sons of Robert, and at Robert's request, all his interest in and to the undivided three-fourths of said land, which was the full interest he then claimed to own, and thereupon they entered into possession of the same. In 1878 John W. Boyd, who in the meantime had acquired the interest of David Boyd in the said lands, permitted the undivided one-fourth interest thereof to be sold for taxes on the advice of his attorney, who bought the same in for him, but in the attorney's name, and thereafter, on March 4, 1881, obtained a tax deed therefor, and on the same day quit-claimed it to John W. The explanation of this proceeding is, that years before the Williams heirs, who inherited from the widow of James Boyd, deceased, had agreed to make a deed of their interest but had failed to do so. It further appears that John W. and David Boyd had continued in possession of these premises from the time they took possession, in 1871, had paid the taxes and received the rents according to their respective interests, and had made improvements in the premises.

The evidence shows that in 1863, when James Boyd, the owner of the common source of title to the land last above described, died, under which title Robert Boyd as well as these defendants took possession, this appellant and his uncle, Robert Boyd, resided in Indiana. After the death of appellant's father, John Boyd, and when ap-

pellant was about eleven years of age, Robert Boyd was appointed his guardian. His mother had died some time before, in 1861, and his father had re-married. When asked his step-mother's name he replied: "I think her name was Sarah. My uncle (Robert Boyd) was our guardian, and took us away when I was not very large, and I have not seen her since." The appellant was born in 1855, and therefore was not of age until 1876. The guardian, as understood, brought the children to Illinois when he removed from Indiana, and, as inferred, continued to exercise some sort of parental control over them until they were of age. John W. Boyd, one of these defendants, testified he was their guardian during their minority. There is no evidence in this record that he, or these defendants, their cousins, ever informed these wards of their interest in any of this land, and there is no evidence to show when they discovered it. This guardian, as well as his sons, evidently knew that these children of John Boyd inherited the interest of their father, who was a brother of James Boyd, deceased, under whose claim of title, directly or indirectly, they, the said John Boyd and sons, had taken possession, and it would require harsh criticism if we were to assume that this guardian, or his sons, intended to take advantage of their dependent condition and ignorance. They resided in Indiana at the time of their uncle's, James Boyd's, death. It appears from the evidence they had never seen him, and of course knew nothing in regard to his property or their relation to or interest in it. They were brought to Illinois by their guardian when mere children, and had no one to look after their interests other than their guardian and these cousins, their father and mother both being dead. The fact that as late as 1878 the interest of the Williams heirs in this land, who stood in no such relation to them as did this appellant, was attempted to be obtained, avowedly through a tax deed, on a failure to comply with an agreement made on a consideration passed, as claimed, indicates a recog-

nition of an outstanding interest in these heirs, for concededly their interest had never been acquired nor an agreement made to acquire it. If, therefore, this appellant, who alone appealed, was a co-tenant of appellees the tax deed would be void, (*Bracken* v. *Cooper*, 80 Ill. 221,) and the other deeds obtained from strangers to the common title, under which they took possession, would be considered as obtained for his interest.

In Freeman on Co-tenancy (2d ed. sec. 152,) the rule is laid down, that where one comes into possession of lands under a common title, with others, such title cannot be assailed while he so remains in possession, the principle being the same as that a tenant cannot assail the landlord's title. Nor, as laid down in section 154, can such co-tenant so holding possession purchase an outstanding title and assert it against his companion in interest. This rule as to taking possession under common title is approved in *Sontag* v. *Biglow*, 142 Ill. 143. It is further said by the above author, (sec. 154,) that if such co-tenant enters into possession under an outstanding title the rule is different, and in such case he can invoke the Statute of Limitations as a bar. This section 154 is quoted with approval in *Montague* v. *Selb*, 106 Ill. 49. Where one alone so takes such possession, pays taxes, receives rents and makes some improvements, it will not be presumed to be adverse, but will ordinarily be held to be for the benefit of all. (*Sontag case, supra,* and cases there cited.) As held in *Bracken* v. *Cooper, supra,* it is not necessary, in order to enforce the above rules, that the interest of the co-tenant should accrue under the same instrument or act of the law. This doctrine is approved in *Montague* v. *Selb, supra.*

It is true, the law recognizes that a co-tenant does not always continue to remain in possession as a co-tenant only, but may assert, with direct or implied notice to the co-tenant, an adverse holding. Whether he has declared by words or acts that he holds adversely is a question of fact. That is often a difficult matter to determine, when

the original entry was apparently or confessedly that of a co-tenant. As is said by Freeman (sec. 232): "In such cases, as there is nothing to give notice that the entry was hostile, in order to show that a subsequent possession became adverse a state of facts must be proved from which an actual ouster is directly established or from which such ouster may be inferred." Manual ousting, to the denial of the rights of a co-tenant made to him directly or brought to his knowledge, when accompanied by an exclusive possession, is sufficient to warrant a finding of ouster. (Freeman, secs. 237, 238.) It is said in section 242, that "the facts which will sufficiently prove such ouster and adverse possession (by inference) will vary according to the *different circumstances* of the parties, and no definite rule can be laid down by which all cases can be governed."

It is said, however, as a rule long continued possession, uninterrupted, *with the knowledge* of the other co-tenants, and without claim or demand for possession or participation in profits, will ordinarily furnish sufficient evidence of ouster. This doctrine, however, is not based on a legal, but on a natural, presumption that one will assert his rights. But he must first know his rights. This rule is recognized in *Littlejohn* v. *Barnes*, 138 Ill. 478, and *Baldwin* v. *Ratcliff*, 125 id. 376. In the latter case, the one setting up the bar of the statute first entered as absolute owner, and in the former case the grantor of the appellee took possession under his grantor, who claimed to be the owner at the time. In both these cases the important element existed that the claimants knew their rights at the time, and knew of the attitude the parties in possession always had assumed towards the land. There was no such relation between those parties as existed between the parties in this case. There is no evidence, as heretofore stated, that the appellant, though brought from Indiana by Robert Boyd, his guardian, when a mere child, was informed of his interest in this land,

which information it was both a moral and legal duty to impart to him. He not having this knowledge, and it not appearing that the assertion of title made by appellees was absolutely hostile to his title, he is not precluded from having his interests protected under the decree of the court.

There was error in the decree of the circuit court of Pike county. That decree is reversed and the cause is remanded.

*Reversed and remanded.*