MRS. KATIE M. WRIGHT ET AL v. IRBY DUNKLIN ET AL.

No. 7451. Decided January 4, 1939.
(123 S. W., 2d Series, 301.)

*John W. Culp,* of Gainesville, *Fred H. Minor,* of Denton, *A. A. White,* of Tyler, *Wynne & Wynne* and *Wm. A. Wade,* all of Longview, *Preston Shirley* and *A. W. Walker, Jr.,* both of Austin, for relators.

On the question of conflict of decisions. Freeman v. Pierce, 250 S. W. 778; Massey v. Greenwood, 56 S. W. (2d) 1103; Friedman Oil Corp. v. Brown, 50 S. W. (2d) 471.

*Cantey, Hanger, McMahon, McKnight & Johnson,* of Fort Worth, *Hayes, Richardson, Shartel, Gilliland & Jordan,* and *Catlett & Kerr,* all of Oklahoma City Okla., and *Wm. K. Miller,* of Austin, for respondents.

Certification of questions of law because of conflicting decisions will be ordered only where the alleged conflict is direct and definite. Harris v. Willson, 122 Texas 323, 59 S. W. (2d) 106; Jones v. Hickman, 121 Texas 405, 48 S. W. (2d) 982; Warner v. Patton, 19 S. W. (2d) 1111.

MR. JUSTICE CRITZ delivered the opinion of the Court.

This is an original mandamus proceeding instituted in this Court by Mrs. Katie M. Wright et al. against the Honorable Justices of the Court of Civil Appeals for the Second District at Fort Worth, Texas. Also, certain others who are necessary and interested parties are joined. The object of this proceeding is to compel the Court of Civil Appeals at Fort Worth to certify certain questions of law arising in a case now pending on appeal in such court. The case in question is an appeal from an order of the district court appointing a receiver. The judgment of the Court of Civil Appeals is final in such a case, and no writ of error is allowed thereto from this Court. Section 5, Article 1821, R. C. S. 1925. This proceeding is instituted under the provisions of Article 1855, R. C. S. 1925, which makes it the duty of the Court of Civil Appeals to certify to this Court questions of law arising where a decision of the Court of Civil Appeals is in conflict with a prior opinion rendered by the Supreme Court or by some other Court of Civil Appeals. The statute last mentioned is mandatory in its terms, and a mandamus proceeding in this Court is the proper remedy to enforce rights thereunder. The case pending in the Court of Civil Appeals is styled Anderson & Kerr Drilling Company et al. v. F. A. Bruhlmeyer et al. 115 S. W. (2d) 1212.

The case before us arose out of the following facts:

On April 28, 1891, N. J. Johnson and wife, M. E. Johnson, conveyed to J. R. Cother a tract of 100 acres of land out of the Hiram Strong Survey in Cooke County, Texas. The above instrument of conveyance is substantially in the usual form

of a general warranty deed, except it contains a reservation clause as follows:

"and the said N. J. Johnson and M. E. Johnson reserves 1/2 interest in all Minerells Paint Rock &c found or will be found on said discribed tract of land"

After the execution and delivery of the above deed the grantees therein, or those claiming under them, discovered oil on the land by such deed conveyed, and such land is now a very valuable oil-producing property.

This suit is pending in the District Court of Cooke County, Texas. Generally speaking, it is an action between those claiming title to all the oil and gas on the above-described land under the above-described deed on the one side, and those claiming title to one-half such oil and gas under the reservation clause contained therein on the other side. In other words, those claiming under the deed assert that the reservation clause does not reserve oil and gas, while those claiming under the reversation clause assert that such clause reserves one-half of all minerals, including oil and gas.

After this suit was filed in the district court, and after a full hearing, the district court, at the instance of those claiming under the reservation clause, entered an order appointing a general receiver to take charge of the above-described land in its entirety, and operate the same as an oil producing property, pending the final disposition of the cause. Those claiming under the deed, who were and are in possession, and who were and are operating the land as an oil producing property, and who are claiming all the oil and gas on and under the land, duly appealed to the Court of Civil Appeals at Fort Worth by filing supersedeas bond. On final hearing in that Court the judgment of the district court was reversed, and the receivership order, as entered, vacated. Appellees, who are those claiming under the reversation clause filed motion for rehearing and to certify. Both motions were overruled, and this proceeding followed.

As we interpret its opinion the Court of Civil Appeals, in effect, holds:

1. That should it be conceded that those claiming title under the reservation clause in the deed from the Johnsons to Cother showed a probable right to recover one-half the oil and gas in and under this land, still, under the undisputed facts of this record, it was inequitable to appoint a general receiver to take possession and control of this land as an oil

producing property, and manage and operate it as such. In fact, we interpret the opinion of the Court of Civil Appeals to hold that this receiver should not have been appointed with the powers given, even if those claiming title under the reservation clause in the deed from the Johnsons to Cother showed an absolute right to recover one-half the oil and gas in and under this land. In this connection we quote the following from the opinion of the Court of Civil Appeals:

"We take it that a receiver should not be appointed by a trial court in a case of this character, unless the evidence shows that the applicants have a probable right of recovery, and that they are in danger of sustaining a loss unless a receiver is appointed. Even if the Johnson heirs are able to show an absolute right to one-half of the oil and gas in and under the lands in controversy, by reason of the above-quoted reservation, it appears to us that it is wholly inequitable and unjust to appoint a receiver to dispossess, so to speak, the appellants, and to take over the entire management and control of the property and the producing wells, in the face of the fact that it is undisputed that the appellants have the absolute title to and are entitled to the possession and control of the property, so far as an undivided one-half interest in the oil and gas in and under the same is concerned; and unless it could be made to appear that the appellants are in some way mismanaging the property and jeopardizing the interest of these heirs, we do not believe that such a receivership is right.

"If, upon the hearing had before the trial court, it appeared to the Court that there was a reasonable probability of the Johnson heirs on a final hearing recovering an undivided one-half interest in and to the oil and gas in and under the property, we are of opinion that the trial court should go no further than to appoint a receiver to watch over, protect and receive the proceeds of an undivided one-half of the oil and gas produced from the property. This would have given the Johnson heirs full and complete protection, and at the same time, would not have disturbed the possession and control of the appellants, who are unquestionably entitled to such possession and control, under the lease under which they held. These appellants have developed the property at great expense to themselves, and their rights in the premises, even if the Johnson heirs may ultimately recover an undivided one-half interest in the oil and gas, are just as sacred, if not more so, than the rights of the Johnson heirs. Therefore, we hold without reservation that the sweeping and broad order appointing a receiver for the properties ought not to have been made,

and that same should be and it is hereby nullified and set aside."

2. That the reservation clause contained in the deed from the Johnsons was and is so ambiguous that it is impossible of a legal interpretation on its face, and therefore it is and was proper for the trial court to resort to and hear parol evidence in order to ascertain the meaning and intent thereof. In this connection, the opinion of the Court of Civil Appeals, as we construe it, holds that the oral evidence contained in the record would justify a finding that the reservation clause under discussion did not, and does not, cover or intend to cover oil and gas. We do not understand that the Court of Civil Appeals holds, as a matter of law, that such construction should be given the deed viewed in the light of the parol evidence, but merely that the reservation clause viewed in the light of the parol evidence would justify such a conclusion. We think our interpretation of the opinion of the Court of Civil Appeals is justified by the fact that it expressly says that the trial court, if he should find probable title in the Johnson claimants, may appoint a receiver "to watch over, protect and receive the proceeds of an undivided one-half of the oil and gas produced from the property."

Under the record as above shown, relators here, who are those claiming under the above reservation clause, have petitioned this Court to require the Court of Civil Appeals to certify to this Court the following questions of law, wherein it is contended that the opinion of the Court of Civil Appeals conflicts with certain prior decisions of this Court and of other Courts of Civil Appeals.

"QUESTION No. 1.

"Did the clause of exception or reservation contained in the deed to a tract of land in Cooke County, Texas, from N. J. Johnson and wife, M. E. Johnson, to J. R. Cother reading as follows, to-wit: 'And the said N J and M E Johnson reserves 1/2 interest in all Minerells Paint Rock &c found or will be found on said discribed tract of land,' except and reserve, as a matter of law, a fee simple title in said grantors in and to an undivided one-half interest in all oil and gas in and under the land conveyed by said deed?

"QUESTION No. 2.

"Did the clause of exception or reservations in the deed from

N. J. Johnson and wife, M. E. Johnson, to J. R. Cother, quoted in requested Question No. 1, have the effect of excepting or reserving unto said grantors a probable right to or interest in the oil and gas in and under the land therein conveyed within the meaning of Sec. 1 of Article 2293, Tex. Rev. Civ. Sts. 1925?

### "QUESTION NO. 3.

"Are the appellees, if owners of an undivided one-half interest in fee simple in and to all oil and gas in and under a tract of land, entitled, as a matter of law, to a receivership of the oil and gas estate under the terms of Article 2293, Sec. 1, Tex. Rev. Civ. Sts, 1925, pending litigation instituted by them to obtain a judicial determination of their ownership, where the appellants, holding under an oil and gas lease from the owners of the other undivided one-half of the fee simple estate in the oil and gas which purported to convey the entire and undivided oil and gas estate for development and production purposes, are in exclusive possession of the common property and have drilled a number of producing oil and gas wells thereon from which they have produced and removed and sold, and are continuing to produce and remove and sell, large quantities of oil and gas and are denying the rights of the appellees' to possession of the common property and of the right to drill thereon, or to lease to others for the purpose of drilling thereon, or even to share in the proceeds of the oil and gas removed and being removed from the common estate?

### "QUESTION NO. 4.

"If it be held that appellees have an undivided one-half interest in the oil, gas and mineral estate, or if it be held that appellees have a probable interest therein, under the provisions of Subdivision One of Article 2293, Texas Revised Civil Statutes of 1925, was it necessary that appellees allege and prove equitable grounds for the appointment of a receiver in addition to complying with the requirements of such Subdivision One of Article 2293 by alleging and proving that the property involved in this litigation was in danger of, and was, being lost and removed?

### "QUESTION NO. 5.

"If it be held that appellees have an undivided one-half interest in the oil, gas and mineral estate, or if it be held that

appellees have a probable interest therein, and if it be further held that under the provisions of Subdivision One of Article 2293, Texas Revised Civil Statutes of 1925, appellees were under the allegations and proof entitled to the appointment of a receiver, was the motion of appellants' that the court limit the power of the receiver, if appointed, to receiving the proceeds of 'such portion of the oil as the Court may fix and deem proper under the circumstances herewith, less the necessary and reasonable cost of operation' sufficient to render the appointment of a receiver of the entire leases improper where such motion was made subject to appellants' exceptions to the appointment of any receiver and without the waiver of such objections and was further made after the trial court had indicated that he was going to appoint a receiver?"

Relators here contend that the opinion of the Court of Civil Appeals holding (a) that the reservation clause in the deed from the Johnsons to Cother is ambiguous and not susceptible of a legal construction without the aid of parol evidence, and (b) that such reservation clause, construed and interpreted in the light of the parol evidence offered by those claiming under the deed from the Johnsons to Cother would justify the conclusion that a reservation of one-half of the oil and gas in this land was not intended by such reservation clause, is in conflict with the following prior decisions of this Court and of the Courts of Civil Appeals:

Rio Bravo Oil Co. v. McEntire, 128 Texas 124, 95 S. W. (2d) 381; Elliott v. Nelson, 113 Texas 62, 251 S. W. 501; Warner v. Patton (Civ. App.), 19 S. W. (2d) 1111; Luse v. Parmer (Civ. App.), 221 S. W. 1031.

The rules of law which define when the Supreme Court has the power to compel certification under Article 1855, supra, are fully stated in the case of Harris v. Wilson, 122 Texas 323, 59 S. W. (2d) 106. We quote as follows from that opinion:

"The Supreme Court will not grant a mandamus to compel certification under Article 1855, supra, simply because it disagrees with the ruling of the Court of Civil Appeals, or believes such ruling is erroneous. In this connection, it is held that an apparent inconsistency in the principles of law announced, or in the application of recognized principles of law, are not sufficient to justify a mandamus under this statute. The ruling must be so far under a similar state of facts that the decision of one case is necessarily conclusive upon the other.

This means that the facts in issue, which are involved in the particular ruling in each of the two cases must be materially the same in both cases, and the decision in one case as to the legal effect of the facts therein must be contradictory of the other. Layton v. Hightower, 118 Texas, 166, 12 S. W. (2d) 110; Jones v. Hickman, 121 Texas, 405, 48 S. W. (2d) 982. These two cases review the decisions of the Supreme Court and announce the now settled rule on this question."

In Rio Bravo Oil Co. v. McEntire, supra, the instrument of conveyance contained a reservation clause which reserved "coal, mineral, stone, or any other valuable deposits." The Court of Civil Appeals (59 S. W. (2d) 962) held that the above clause was sufficient to include oil and gas. Passing on the same clause in the same case, this Court held that same was sufficient, "as a matter of law," to cover oil and gas. We quote the following from the opinion of this Court:

"The Court of Civil Appeals correctly held that the language used in the reservation of minerals in the contracts by which the railway company in 1882 sold the land to Kelley was sufficient as a matter of law to include oil and gas. Elliott v. Nelson, 113 Texas, 62, 251, S. W., 501; Luse v. Boatman, 217 S. W., 1096 (application for writ of error refused); Warner v. Patton, 19 ·S. W. (2d) 1111 (application for writ of error refused.)"

■ It will be noted that the decision of this Court in the Rio Bravo Oil Company Case, supra, that oil and gas were reserved was expressly bottomed on the reservation of "mineral." In other words, this Court held that a general reservation of the "mineral" operated to reserve oil and gas. In the case at bar the Court of Civil Appeals does not hold, or attempt to hold, that a reservation of minerals, or a specific portion thereof, does not reserve oil and gas. In this regard the Court of Civil Appeals simply holds that under the peculiar wording of this reservation clause it is impossible to ascertain its intent or proper interpretation. Simply stated, in the Rio Bravo Oil Company Case, supra, the word *mineral* was undoubtedly used as a noun, no issue being raised on that question, and as so used this Court said it covered or embraced oil and gas. In the case at bar the Court of Civil Appeals, in effect, holds that on the face of the instrument of conveyance it is not possible to tell whether "Minerells," meaning *minerals* was intended as a noun or as an adjective limiting Paint Rock. It is true that the opinion of the Court of Civil Appeals does not use this language, but such is its legal effect. As shown by

the quotation from Harris v. Wilson, supra, we cannot grant mandamus under Article 1855, supra, simply because we believe a ruling of the Court of Civil Appeals is erroneous. In order to justify a mandamus the decision in the one case must in legel effect overrule the decision in the other case on facts that are materially the same. In our opinion, the ruling of the Court of Civil Appeals in this case could never be cited as overruling the ruling of this Court in the Rio Bravo Oil Company Case in regard to the question of law here involved. This being true, we are without power to mandamus the Court of Civil Appeals to certify the requested questions of law pertaining to this matter.

█ We will not extend this opinion by discussing in detail the other cases cited by relators as in conflict with the instant opinion of the Court of Civil Appeals in regard to the matter here under consideration. It is sufficient to say that all such cases, in legal effect, hold that a reservation of minerals embraces oil and gas. What has been said about the Rio Bravo Oil Company Case, supra, applies with equal effect to these cases. We do not express any opinion as to the correctness of the holding of the Court of Civil Appeals. It is not proper that we should here do so.

As we understand this record, those who hold and claim this land through Cother are in full possession thereof to the exclusion of those claiming through the Johnsons. It is shown that those claiming through Cother have developed this land as an oil producing property. Such parties have drilled eighteen producing wells, and have produced and sold large quantities of oil therefrom. If left alone, these parties will continue in the future to develop, produce, and sell. It is shown that those claiming under Cother are denying that those claiming under the Johnsons have any right, title, or interest in the oil or gas in or under this land, and are denying such Johnson claimants any voice in the management of such land as an oil producing property. Finally it is shown that those claiming under the Johnsons have received no part of the proceeds of the oil already produced and sold. Under such a record, the Court of Civil Appeals, in effect, holds that, as a matter of law, the district court erred in appointing a general receiver. The Court of Civil Appeals then holds that "Even if the Johnson heirs are able to show an absolute right to one-half of the oil and gas in and under the lands in controversy, by reason of the above-quoted reservation, it appears to us that it is wholly inequitable and unjust to appoint a receiver to dispossess, so to speak, the appellants," etc. The Court of Civil

Appeals then further holds that "If, upon the hearing had before the trial court, it appeared to the Court that there was a reasonable probability of the Johnson heirs on a final hearing recovering an undivided one-half interest in and to the oil and gas in and under the property, we are of the opinion that the trial court should go no further than to appoint a receiver to watch over, protect and receive the proceeds of an undivided one-half of the oil and gas produced from the property."

Those claiming under the Johnsons contend that the above rulings are in conflict with certain prior rulings, as shown by the following cases: Freeman v. Pierce (Tex. Ct. Civ. App.), 250 S. W. 778; Consolidated Petroleum Co. v. Austin (Texas Ct. Civ. App.), 283 S. W. 879; Massey v. Greenwood (Texas Ct. Civ. App.), 56 S. W. (2d) 1103; Friedman Oil Corp. v. Brown (Texas Ct. Civ. App.), 50 S. W. (2d) 471.

In Freeman v. Pierce, supra, Freeman et al, were in possession of a tract of land, claiming the title to the whole estate therein. Such parties had drilled several wells thereon and were producing large quantities of oil therefrom. Such parties were drilling more wells to produce more oil. Pierce et al. brought suit against Freeman et al., claiming a one-half interest in the land and the oil therein. Pierce et al. showed a probable interest in a very substantial part of the property. Pierce et al. prayed for the appointment of a general receiver to take active charge and control of the property, pending the suit. The district court appointed the receiver as prayed for. In passing on the validity or correctness of such appointment the Court of Civil Appeals of the Dallas District said:

"A consideration of the foregoing compels us to conclude that the heirs of Ernest Pierce and the interveners Ben F. Cone and A. B. Rennolds have a probable interest in the property involved in this suit. The fact that there are several oil wells now on this property actively producing large quantities of oil daily, and that many more are being drilled, renders precarious the interests of appellees in said property and places a portion of it in danger of being removed and the remainder materially injured. Therefore the appointment by the trial court of a receiver to take charge of the property during the pendency of the suit was proper and correct, and its order and action in so doing is here affirmed."

In our opinion, the ruling or decision of the Court of Civil Appeals in the instant case is in direct conflict with the ruling or decision of the Court of Civil Appeals in Freeman v. Pierce,

supra, within the meaning of Article 1855, supra, and within the meaning of a conflict as defined in Harris v. Wilson, supra. In other words, the two rulings or decisions are absolutely conflicting on the same law questions under similar facts, and the ruling or decision in this case is so contradictory of the ruling or decision in Freeman v. Pierce as to overrule the same.

We shall not attempt a discussion of the other three cases cited above, and contended by relators to be in conflict with the opinion in the instant case. Such is not necessary. The mandamus must be granted on the conflict between the ruling in this case and the ruling in Freeman v. Pierce, supra.

It is ordered that the Court of Civil Appeals certify to this Court relators' requested questions three and five, or the substance thereof. It is not necessary to certify question number four, as the principle of law there involved is included in questions three and five. As already stated, we find no conflict in the matter involved in requested questions one and two. Of course, the Court of Civil Appeals, at its discretion, may certify any question or questions of law involved in the case.

Opinion delivered January 4, 1939.