ANDERSON & KERR DRILLING COMPANY ET AL V.
F. A. BRUHLMEYER ET AL.

No. 7543.  Decided February 21, 1940.
Rehearing overruled March 27, 1940.
(136 S. W., 2d Series, 800.)

*Catlett & Kerr,* of Oklahoma City, Okla., *Cantey, Hanger, McMahon, McKnight & Johnson,* all of Fort Worth, for appellants.

The reservation contained in the deed of N. J. Johnson and his wife to J. R. Cother did not reserve as a matter of law a fee simple title in the grantors to an undivided one-half intesest in the oil and gas in and under the land conveyed by the deed. The meaning of the purported reservation is sufficiently uncertain or indefinite to permit the court to construe the language most favorable to the grantees. Neither were applicants entitled to the appointment of a receiver. Texas Creosoting Co. v. Hartburg Lbr. Co., 12 S. W. (2d) 169; Lemp v. Armengol, 86 Texas 690; 14 Tex. Jur. 924.

*John W. Culp,* of Gainesville, *Fred H. Minor,* of Denton, *A. A. White,* of Tyler, *Wynne & Wynne* and *Wm. A. Wade,* all of Longview, for appellees.

The reservation in the deed did, as a matter of law, reserve to the grantors, to the extent of an undivided one-half interest, the oil and gas in and under said land and constituted a severance of said minerals from the soil, so that no limitation would run in favor of occupants of the surface. The appellees were entitled to the appointment of a receiver to the entire property because of this interest in the minerals therein. Richardson v. McCloskey, 228 S. W. 323; Lines v. Robinson, 91 S. W. (2d) 1108, 1112; 36 Tex. Jur. 84, 147, 148.

*Hayes, Richardson, Shartel, Gilliland & Jordan,* of Oklahoma City, Okla., filed brief for Leo J. Portman, who holds a leasehold interest in a portion of this tract of land.

Mr. Judge Smedley, of the Commission of Appeals delivered the opinion for the Court.

The Court of Civil Appeals for the Second District has certified three questions to this Court by certificate which briefly and clearly sets out the nature of the case, the material facts and the questions as follows:

"This is an appeal from an order appointing a receiver to take over the entire management and control of a tract of land in Cooke County, Texas, on which there are a number of pro-

ducing wells, which are being operated under a lease by the appellants.

"The appellees, who prayed for the appointment of the receiver, and all parties interested, are circumstanced as follows: N. J. Johnson and his wife, M. E. Johnson, owned this tract of land on April 28th, 1891, and conveyed same to one J. R. Cother. The following reservation is found in this deed: 'And the said N. J. Johnson and M. E. Johnson reserves one-half interest in all Minerells Paint Rock &c found or will be found on said tract of land.' The appellees, who are heirs of the Johnsons, contend that this reservation entitles them to one-half of the oil and gas in and under the said lands.

"The appellants, on August 4th, 1936, brought suit in the District Court of Cooke County against N. J. and M. E. Johnson and their unknown heirs, and others, in trespass to try title, and judgment for plaintiffs was had on October 29th, 1936; the service on the defendants being had by publication.

"On August 21st, 1937, appellees, who are heirs of the Johnsons, filed their original petition, seeking to set aside said judgment and amended their petition on August 29th, 1937. No citations were issued upon the defendants in this action, and the hearing was set for November 5th, 1937, in vacation, and appellants were required to answer the application for receivership by telegraphic notices. Upon a hearing, the trial court appointed a receiver, on November 23rd, 1937, giving such receiver full authority to take over the entire management and control of the property and the producing wells.

"The undisputed testimony discloses that the wells on the premises are being operated in a prudent and economical manner. There is no evidence of waste or extravagance in the operation thereof.

"It is undisputed that the appellants have the fee simple title to and are entitled to the possession and control of the property, so far as an undivided one-half interest in the oil and gas in and under the lands is concerned, and that the fee to the surface rights belongs absolutely to the appellants.

"When the matter was being tried before the District Court and such court indicated that the petition for a receiver would be granted, the appellants requested the trial court to limit the powers of the receiver to that of taking over and protecting the proceeds from the portion of the oil claimed by appellees and to provide for the impounding of such funds in some bank to be selected by the court, or, in the alternative, that the trial court require a bond, conditioned in such manner that it would protect the appellees with respect to the operation of the prop-

erties, and to compel appellants to account for the proceeds of the oil produced from the premises.

"The trial court declined to do either or any of these things and appointed a receiver to take full and complete control of the properties, including all wells, equipment, machinery, etc.

"This court passed judgment on the cause, as is reflected in the opinions published in Vol. 115 S. W. (2d) pp. 1212 to 1217, and the matter having been brought to the Supreme Court by petition for a writ of mandamus, in obedience to the judgment and opinion of the Honorable Supreme Court, we respectfully certify to you, for determination, the following questions:

## No. 1

"Did the clause of exception and reservation contained in the deed from N. J. Johnson and wife, M. E. Johnson, to J. R. Cother, reading as follows: 'And the said N. J. and M. E. Johnson reserves 1/2 interest in all Minerells Paint Rock &c found or will be found on said described tract of land', except and reserve as a matter of law, a fee simple title in said grantors in and to an undivided one-half interest in all oil and gas in and under the land conveyed by said deed, or is such provision so ambiguous or so lacking in definiteness, that its meaning requires proof and explanation?

## No. 2

"If, in the opinion of the trial court, the appellees have a probable interest in the fee simple title to an undivided one-half interest in and to the oil and gas in and under the lands in controversy, are the appellees entitled, as a matter of law, under the terms of Article 2293, Sec. 1, Revised Civil Statutes, 1925, to have a receiver appointed to take complete control of the oil and gas estate and all equipment, machinery, wells, and to have such receiver take complete charge of all operations, pending the final determination of litigation instituted by appellees to obtain a judicial determination of their ownership, where appellants, being the owners, and lessees of the owners, of an unquestioned undivided one-half interest in the lands and mineral rights, are in exclusive possession of the lands and have drilled a number of producing wells thereon, from which they have produced and sold, and are continuing to produce and sell large quantities of oil and gas, and are denying the right of appellees to possession of the property, to drill thereon, to lease the lands to others, or to share in the proceeds of the oil and gas being produced therefrom?

## No. 3

"The trial court being of the opinion that appellees have a probable right of recovery of an undivided one-half interest in and to the oil and gas in and under the lands in controversy (or if such interest be undisputed, as a matter of law), and if it be held that under the provisions of Subdivision 1 of Article 2293, Revised Civil Statutes, 1925, appellees were, under the allegations and proof, entitled to the appointment of a receiver, was the request, or motion, made by appellants, to have the trial court limit the power and authority of the receiver to that of protecting and controlling the proceeds of the portion of oil in which appellees have an absolute or probable interest, less the necessary and reasonable cost of operation, and the offer to protect the probable interest of appellees by a sufficient bond, or by impounding the portion of the net proceeds to which appellees have a probable interest, in some bank to be selected by the court, sufficient to render the appointment of a receiver of the entire lands, leases, wells, machinery and equipment, improper where such motion and offer were made subject to appellants' exceptions to the appointment of any receiver and without waiver of such objections, and when such motion and offer were made after the trial court indicated that the prayer for a receiver would be granted?"

As to the first question, the appellees take the position that the clause of exception or reservation contained in the deed from N. J. Johnson and wife, M. E. Johnson, to J. R. Cother, excepted or reserved as a matter of law a fee simple title in said grantors in and to an undivided one-half interest in all oil and gas in and under the land conveyed by the deed. The appellants, on the other hand, contend that the meaning of the said clause of exception or reservation is sufficiently uncertain or indefinite to require or permit the court to construe the language used in the instrument with any light that may be shed thereon by a full consideration of the entire transaction as shown by the attending facts.

The original deed and photostatic copies thereof which accompany the record will be considered in connection with the facts set out in the certificate, as both parties in their briefs and oral arguments have invited such consideration. The reservation appearing in the deed is as follows:

"and the said N J & M E Johnson reserves 1/2 interest in all Minerells Paint Rock &c found or will be found on said discribed tract of land."

Attention is directed to the erroneous spelling of the word minerals and the word described and to the absence of punctuation. The deed is on a printed form, the names of the parties, the statement of the consideration, the description of the land and the reservation being written in longhand. In many places the draftsman failed to insert periods where they should have been used. There are a number of semicolons in the description of the land by metes and bounds, but we have found only one comma, or possibly two, in the part of the deed written in longhand, although there are many places where commas should have been inserted. Often a dash appears where ordinarily a comma or period would be used.

■ Errors in spelling are usually unimportant. In an early Pennsylvania case, Watters v. Bredin, 70 Pa., St., 235, 237, the court, after setting out a deed to be construed, said: "I have omitted the inaccuracies in spelling, for mala grammatica non vitiat chartam." The following rule is stated in Baustic v. Phillips, 134 Ky. 711, 121 S. W. 629, 630:

"Where it is perfectly plain that a word is misspelled the courts will construe the deed according to the meaning of the word intended, rather than according to the meaning of the word actually used."

See also Huntington v. Lyman, 138 Mass. 205; 18 C. J. p. 260, Sec. 213. We are warranted, therefore, since it is perfectly plain that the word was misspelled, to read the cause of reservation as if "minerals" had been written instead of "Minerells."

■ The following rules with reference to punctuation have been announced: The words, not the punctuation, are the controlling guide in construing a contract. If the meaning of the words is clear the court will interpret a contract according to their meaning and without regard to the punctuation marks or the want of them. While punctuation may be resorted to in order to solve an ambiguity which it has not created, punctuation or the absence of punctuation will not of itself create ambiguity. Holmes v. Phenix Insurance Company (U. S. C. C. A.) 98 Fed. 240, 47 L. R. A. 308; Commonwealth Casualty Company v. Aichner (U. S. C. C. A.) 18 Fed. (2d) 879; Lessee of Ewing v. Burnet, 11 Pet. 41, 9 L. Ed. 624, 630; Olivet v. Whitworth, 82 Md. 258, 33 Atl. 723, 724-725; 12 American Jurisprudence, pp. 799, 800, Sec. 256, 18 C. J. p. 258, Sec. 207; Note 3 A. L. R. 1064-1068.

■ The absence of a comma between "Minerells" and "Paint Rock" does not cause ambiguity or such uncertainty in the

meaning of the reservation as will permit the consideration of extrinsic evidence in construing the deed; and we may insert the comma, in order to ascertain from the words used the intention of the parties. When the comma is inserted and the erroneous spelling corrected the clause is as follows:

"and the said N J and M E Johnson reserves one-half interest in all Minerals, Paint Rock, etc. found or will be found on said described tract of land."

In our opinion it is well settled by the decisions in this State that this reservation includes oil and gas. Luse v. Boatman, 217 S. W. 1096 (application for writ of error refused) ; Luse v. Parmer, 221 S. W. 1031 (application for writ of error refused) ; Elliott v. Nelson, 113 Texas 62, 251 S. W. 501; Rio Bravo Oil Company v. McEntire, 128 Texas 124, 95 S. W. (2d) 381, 96 S. W. (2d) 1110; Warner v. Patton, 19 S. W. (2d) 111 (application for writ of error refused) ; Graham's Estate v. Stewart, 15 S. W. (2d) 72 (application for writ of error refused).

In Luse v. Boatman and Luse v. Parmer, supra, the deeds reserved "all the coal and mineral on and in the above described land." It was held that the reservation included oil and gas. The decision made in Luse v. Boatman was given express approval in Elliott v. Nelson, supra, and the opinion was adopted by the Supreme Court. In the case last referred to the court answered in the affirmative a certified question, which was whether a reservation "of all minerals," contained in a deed executed in 1883, included within its operative effect oil and gas. It was held in Rio Bravo Oil Company v. McEntire, supra, on the authority of Elliott v. Nelson and the other cases above cited, that a reservation, made in 1882, of "coal, mineral, stone or any other valuable deposits" was sufficient as a matter of law to include oil and gas. We are unable to find any reasonable basis for a distinction between the reservation under consideration in the instant case and the reservations which were construed in the prior decisions above cited. Here we have a reservation of all minerals, paint rock, etc. In those cases the reservations were of "all the coal and minerals," "all minerals," "coal, mineral, stone or any other valuable deposits." In some of those cases the contention was made, as here, that the parties did not contemplate that the reservation should include oil and gas, because there had been no considerable production of oil or gas in the community or in the state when the deed was made. It was held, however, that the reservation included oil and gas as

a matter of law because the plain language used in the deed was broad enough to include them.

The Supreme Court of Appeals of West Virginia, in Norman v. Lewis, 100 W. Va. 429, 130 S. E. 913, held that oil and gas were reserved by a deed in which the language used is strikingly similar to that contained in the deed here under consideration. The deed, executed in 1879, reserved "all minerals, coal, iron, etc." Also very closely in point is a recent decision of the Kentucky Court of Appeals in Maynard v. McHenry, 271 Ky. 642, 113 S. W. (2d) 13. It was held that natural gas was included in a reservation of "all minerals, coal and oil privileges" because the word minerals embraced natural gas and there was nothing in the language of the deed to show that the parties contemplated something less general than all substances legally cognizable as minerals.

■ In our opinion the ejusdem generis rule cannot be applied to exclude oil and gas from the operation of the reservation. It would have been more appropriate to the reservations contained in some of the cases above discussed than to the reservation here to be construed and in those cases it was either expressly rejected or not considered. Furthermore, the words "all minerals" precede the particular words "paint rock," whereas the rule is generally thus stated: "General words *following* particular words will not include things of a superior class." (Our italics.) Right of Way Oil Co. v. Gladys City Oil, Gas & Mfg. Co., 106 Texas 94, 103, 157 S. W. 737. See also Richardson v. Nesbit, 204 S. W. 689 (application for writ of error refused) ; 17 Texas Jurisprudence, p. 308, Sec. 175; 19 C. J. p. 1255; 3 Words & Phrases (1st series) p. 2338; Bouvier's Law Dictionary, (3rd Revision) Vol. 1, p. 979. By the same authorities attention is directed to the fact that the rule of ejusdem generis is merely a rule of construction, an aid to interpretation when the intention is not otherwise apparent. We believe it clearly appears here, from the use of the term "all minerals" and from its position in the phrase, that the larger subject, "all minerals," was primarily in the minds of the parties, that the words "paint rock" following "all minerals" were intended as a partial enumeration of minerals and that "&c" was used to denote minerals not enumerated. Norman v. Lewis, 100 W.Va. 429, 130 S.E. 913, 914.

■ We do not believe that the word "on," appearing in the reservation instead of the commonly used "on, in and under," limits the reservation to those minerals that are on the surface. The preposition "on" has a broader meaning than "on the surface of." To say that gold or oil has been found on a tract of

land may mean that it has been discovered on the surface, but usually discovery beneath the surface is meant. Oil or water is found on land when it is discovered in a well drilled or bored below the surface. For examples of instruments clearly intended to affect oil and gas or other minerals beneath the surface but using the words "on the land" see Donnell v. Otts, 230 S. W. 864; Way v. Venus, 35 S. W. (2d) 467; Kentucky Diamond Mining, etc. Co. v. Kentucky Transvaal Diamond Co., 141 Ky. 97, 132 S. W. 397, Ann. Cas. 1912 C, 417.

■ Appellees, in support of the contention that extrinsic evidence should be admitted to determine the intention of the parties as to what minerals should not pass to the grantee, invoke the rule that when an instrument does not by its terms plainly and clearly disclose the intention of the parties, or is phrased in language fairly susceptible of more than one interpretation, the intention is to be ascertained, not solely from the words of the instrument, but from its language when read in the light of the circumstances surrounding the transaction. We recognize that rule. It is supported by many authorities. Colquitt v. Eureka Production Company (Com. App.) 63 S. W. (2d) 1018; Ryan v. Kent (Com. App.) 36 S. W. (2d) 1007; Gulf Production Company v. Spear, 125 Texas 530, 535, 84 S. W. (2d) 452; 12 Am. Jur. pp. 786-787, Sec. 248. It is plainly implied, however, from the statement of the rule that when the instrument by its terms plainly and clearly discloses the intention of the parties, or is phrased in language not fairly susceptible of more than one interpretation, the intention of the parties is to be ascertained by the court as a matter of law from the language used in the writing and without aid from evidence as to the attending circumstances. And the authorities so hold. Soell v. Haddon, 85 Texas 182, 187, 19 S. W. 1087; Reynolds v. McMann Oil & Gas Company (Com. App.) 11 S. W. (2d) 778, 781, 785; Benskin v. Barksdale (Com. App.) 246 S. W. 360; Graham's Estate v. Stewart, 15 S. W. (2d) 72 (application for writ of error refused) ; 12 Am. Jur. p. 787, Sec. 248, and authorities cited in Note 1. To the authorities last cited may be added the decisions above discussed which hold that a reservation of "minerals" is sufficient as a matter of law to include oil and gas, although at the time the reservation was made coal or other solid mineral had been produced in the community, or state, but oil and gas had not.

From our conclusion that the deed by its terms plainly and clearly evidences the intention of the grantors to reserve all minerals, including oil and gas, it follows that it became the

duty of the court to give the deed that construction without looking to the attending circumstances for explanation.

■ We answer the first certified question as follows: The clause of exception and reservation contained in the deed excepts and reserves as a matter of law a fee simple title in the grantors in and to an undivided one-half interest in all oil and gas in and under the land conveyed by the deed, and such provision is not so ambiguous, or so lacking in definiteness, that its meaning requires proof or explanation.

The second and third certified questions relate to the action of the trial court in appointing, after hearing, a receiver to take possession of the minerals in the tract of land, with authority to take charge of the oil wells on the land, the pumps and equipment used in producing and marketing the oil, to continue to produce and market the oil, to care for the property and to hold the proceeds arising from operation subject to the orders of the court. The material facts set out in the certificate, most of which are embodied in the second certified question, are as follows: Appellants are the owners and lessees of an unquestioned, undivided one-half interest in the land and mineral rights, are in exclusive possession of the land and have drilled a number of producing wells thereon, from which they have produced and sold, and are continuing to produce and sell, large quantities of oil and gas, asserting ownership of, and the right to produce and sell, all of the oil and gas. Appellants have excluded, and are excluding, appellees from possession of the land, and have denied, and are denying, the right of appellees to possession of the land or to drill thereon or to lease the land to others or to share in the proceeds of the oil and gas produced therefrom. The substance of the second question is whether, in view of these facts, and if they have a probable right to, or interest in, the fee simple title to an undivided one-half interest in the oil and gas, appellees are entitled, as a matter of law, under the terms of Subdivision 1 of Article 2292, Revised Civil Statutes of 1925, to have a receiver appointed for the oil and gas estate, with the authority above stated.

Article 2293, omitting Subdivisions 2 and 3, which are not relevant here, is as follows:

"Receivers may be appointed by any judge of a court of competent jurisdiction of this State, in the following cases:

"1. In an action by a vendor to vacate a fraudulent purchase of property; or by a creditor to subject any property or fund to his claim; or between partners or others jointly owning or

interested in any property or fund, on the application of the plaintiff or any party whose right to or interest in the property or fund or the proceeds thereof is probable, and where it is shown that the property or fund is in danger of being lost, removed or materially injured.
" * * *

"4. In all other cases where receivers have heretofore been appointed by the usages of the court of equity."

This statute, enacted in 1887 and brought forward thereafter in the several codes, broadens the right to a receiver as recognized in courts of equity by expressly specifying certain cases enumerated in its Subdivisions 1 to 3 in which receivers may be appointed. The prior statute, Article 1461 of the Revised Civil Statutes of 1879, in general terms only, gave authority for the appointment of a receiver "when no other adequate remedy is given by law for the protection and preservation of property or rights of parties therein, pending litigation in respect thereto."

The instant case is one of those named in Subdivision 1 of Article 2293, the present statute, being a suit between persons jointly owning or interested in property. Subdivision 1 is not merely the statement of one ground for the appointment of a receiver to be made when justified by the usages of equity. The subdivision itself gives the standard from which the right to the relief may be ascertained in a given case without resort to rules of equity. It provides in substance that in such suit the court may appoint a receiver when two conditions exist: (1) The plaintiff or other party must be shown to have a probable right to or interest in the property or fund; (2) it must be shown that the property or fund is in danger of being lost, removed or materially injured. There is no additional condition or requirement, as for example, proof of insolvency of the defendant or that the plaintiff or other applicant for the appointment of the receiver has no other adequate remedy.

■ We think it clearly appears from the terms of Article 2293 that, when appointment of a receiver is sought in the character of suit specified and on the grounds stated in Subdivision 1 of that article, "allegations and proof of insolvency of defendant, inadequacy of legal remedy or other equitable grounds are not necessary." Hunt v. State, 48 S. W. (2d) 466, 469. This construction has been given the statute by many decisions of the Courts of Civil Appeals. Freeman v. Pierce, 250 S. W. 778; Consolidated Petroleum Co. v. Austin, 283 S. W. 879; Richard-

son v. McCloskey, 228 S. W. 323; Temple State Bank v. Mansfield, 215 S. W. 154; Massey v. Greenwood, 56 S. W. (2d) 1103; Friedman Oil Corporation v. Brown, 50 S. W. (2d) 471; Zanes v. Mercantile Bank & Trust Co., 49 S. W. (2d) 922 (application for writ of error refused).

■ In our opinion, the facts shown by the certificate of the Court of Civil Appeals brought the case within the provisions of Subdivision 1 of Article 2293, and authorized the trial court's order appointing the receiver. The first of the two prescribed conditions existed. Appellees, the heirs of the grantors in the deed reserving the one-half interest in the minerals, had, as indicated by our answer to the first question certified, more than a probable right to or interest in an undivided one-half of the minerals, including oil and gas. The second of the two prescribed conditions also existed. Appellants, in possession of the property and admitted owners of a one-half interest in the minerals, were asserting ownership of all of the minerals and denying appellees' ownership of any interest therein. They had drilled oil wells on the property and had taken and disposed of, and were continuing to take and dispose of all of the oil produced, and denied, and were denying, the right of appellees to participate in developing the property or producing the oil or to have or take any part of the oil, or its proceeds, when produced. Such acts on the part of appellants rendered "precarious the interests of appellees in said property and placed a portion of it in danger of being removed and the remainder materially injured." Freeman v. Pierce, 250 S. W. 778, 782.

Mandamus requiring the certification of the questions with respect to the appointment of the receiver was granted because of conflict between the decision of the Court of Civil Appeals herein and the decision of the Court of Civil Appeals in Freeman v. Pierce, supra. See Wright v. Dunklin, 132 Texas 188, 123 S. W. (2d) 301. As shown by the opinion granting the writ of mandamus, the facts in issue involved in the particular ruling in each of the two cases are materially the same. It is apparent from what has been said that we approve the decision made in Freeman v. Pierce.

We conclude that the facts alleged and proven, as set out in the certificate, show compliance by appellees with the requirements of Subdivision 1 of Article 2293, and that the trial court's order appointing the receiver was authorized by such facts. The second certified question is answered in the affirmative.

It is shown by the third certified question that after the completion of the hearing of the application for the appointment of

a receiver, and after the trial court had indicated that a receiver would be appointed, the appellants requested the court to limit the power and authority of the receiver to that of protecting and controlling the proceeds of the portion of the oil in which appellees might have an interest, less cost of operation, and offered to protect the probable interest of appellees in such proceeds by a bond or by impounding in a bank the net proceeds to the extent of such interest. The substance of the question is whether such request and offer on the part of the appellants defeated appellees' right to a receiver of the property or rendered the appointment of the receiver improper.

■  Appellees are not asserting merely an interest in the proceeds of oil and gas taken from the land. They claim, under the reservation, the title to an undivided one-half interest in all minerals in place. The appellants are denying that claim and asserting title to the entire interest in the minerals. The property in controversy, therefore, is the minerals in the land. Appellees sought the appointment of a receiver for the property, that is, the minerals in the land, as owning the property jointly with appellants. Subdivision 1 of Article 2293 authorizes the appointment of a receiver for the property, which in this case is the oil, gas and other minerals in the tract of land. While the extent of appellees' asserted interest is an undivided one-half interest, the receivership was correctly made to apply to the entire interest. This is true both because the statute clearly contemplates that the receivership extend to the entire property and because otherwise a receivership of property owned in undivided interests, or owned and claimed in undivided interests, would not be effective. See Merrell v. Moore, 47 Texas Civ. App. 200, 104 S. W. 514, 517. It is appropriate to observe in this connection that, as has so often been said, the receiver is not appointed for the benefit of the applicant, but to receive and preserve the property for the benefit of all parties interested therein.

Restriction of the receivership to the proceeds of the oil after production and sale would not constitute compliance with the statute which, as has been said, authorizes the appointment of a receiver for the property, nor would it afford adequate and equal protection to both parties pending litigation. Appellees, if the owners of an undivided one-half interest in the oil and gas, have the same right to enter upon the land and produce and market oil and gas that appellants have. A receivership extending only to the proceeds of the oil and gas, or to a part of the proceeds, or the giving of a bond, or the impounding of such proceeds, would leave the production and marketing of the oil

and gas within the control of the appellants, who are denying the asserted rights of appellees, rather than to the impartial control of a receiver acting for all interested parties.

An offer somewhat similar, to avoid the appointment of a receiver, was made in Richardson v. McCloskey, 228 S. W. 323. The Court of Civil Appeals, in affirming the order appointing the receiver, expressed the opinion that the offer was properly rejected by the trial court, because the appellees had shown a legal statutory right for a receiver and further because the offer was so conditioned and limited as to deny the substantial relief appellees were seeking. These same reasons support the trial court's action in the instant case.

In our opinion, the request and offer made by appellants, stated in the third question certified, were not sufficient to render the trial court's order appointing the receiver improper. That question is answered in the negative.

Opinion adopted by the Supreme Court February 21, 1940.

Rehearing overruled March 27, 1940.