## GILMER v. FERGUSON.

### No. 4082.

Court of Civil Appeals of Texas. El Paso.

Jan. 30, 1941.

Rehearing Denied Feb. 27, 1941.

Morriss & Morriss, of San Antonio, for appellants.

J. M. Goggin, Wyndham K. White, and Kemp, Nagle & Smith, all of El Paso, and Frank O. Ray, of Alpine, for appellee.

PRICE, Chief Justice.

This is an appeal from an interlocutory order of the District Judge of Brewster County appointing a receiver for seven rent cottages situated in the City of Alpine in a suit wherein Nellie C. Ferguson, individually and as independent executrix of the estate of her husband, was plaintiff, and J. W. Gilmer and others were defendants.

In this opinion Mrs. Ferguson will be hereinafter designated as plaintiff, and J. W. Gilmer as defendant.

Plaintiff sought to set aside a certain trustee's deed conveying the property in question to defendant and to recover such property. A receiver was sought as an ancillary remedy to the final relief. The trustee's deed in question was alleged to have been executed and delivered by Milton Gilmer, as substitute trustee, to J. W. Gilmer in the foreclosure of the deed of trust securing a note of plaintiff to the Great Southern Life Insurance Company, upon which, at the time of the foreclosure sale, July 2, 1940, there was a balance of $1,797.46 due. A fraudulent sale and purchase were averred. The market value of the property was alleged to be $10,000, and the amount realized on the sale $1,910; that the purchase of the property for an inadequate price was brought about by a fraudulent and collusive agreement between the trustee, Milton Gilmer, who was the son of defendant, and the defendant. It is further alleged that defendant was insolvent and that unless a receiver was appointed to take over said property and manage the same and to collect the rents, plaintiff was in danger of losing the rents and the property in danger of being materially injured, portions thereof removed, and the property as a whole reduced in value by defendant's use and management. The

prayer of the petition was for a receiver to collect and preserve the rents, for the cancellation of the trustee's deed, and the recovery of .the property by the plaintiff, and judgment for all rents collected by defendant from the time of his taking possession of said property to the time that same be restored to the plaintiff, and that plaintiff recover of the receiver the amount of rents collected by such receiver.

Defendant's answer was somewhat lengthy. Suffice it to say that it specially traversed all the material allegations in plaintiff's petition, specially pleaded facts showing the regularity of the sale, and that same was in all respects fair and regular; insolvency was likewise denied, and it was specially pleaded that if plaintiff were entitled to recover, defendant was entitled to be reimbursed in the sum of $1,910, and averred that he owned property in his own name and right subject to execution of the reasonable value of fifty thousand dollars in excess of his debts.

In view of the fact that this is an appeal from an interlocutory order and the case stands for final trial on the merits, we shall, as far as possible, refrain from a discussion involving the merits on final trial.

The court, on motion of defendant, made findings of fact and conclusions of law. Same are comprehensive and complete and will conduce to a better understanding of the issues involved. Omitting the caption, they are as follows:

"Findings of Fact

"I find that on the 1st day of September, 1932, the plaintiff, Mrs. Nellie C. Ferguson, was the owner of the following described property situated in the City of Alpine, Brewster County, Texas, to-wit: Being a part of lots one (1), two (2), and three (3), Block One (1), Hancock Addition to the City of Alpine, in said county, and the west one-half (½) of Lots three (3), four (4), and five (5), Block Twenty (20), Original Townsite of Alpine, Texas, upon which are located seven residence cottages; that on said date she executed a deed of trust to W. S. Horne, as trustee for the use and benefit of the Great Southern Life Insurance Company, to secure a debt of $4,250.00.

"2. That on or about the 4th day of June, 1940, Milton Gilmer, of Alpine, Texas, was appointed substitute trustee.

"3. That on the 2nd day of July, 1940, the debt had been reduced to $1797.46.

"4. I further find that on July 2, 1940, the above described property was struck off at a trustee's sale by Milton Gilmer, as substitute trustee, to his father, J. W. Gilmer, one of the defendants in this cause, for the sum of $1910.00.

"5. I further find that on July 2, 1940, the property had a reasonable rental value of $135.00 per month, and was then and had been for some time prior thereto, regularly rented for the aggregate sum of $135.00 per month.

"6. I further find that on July 2, 1940, the property had a market value of, and was reasonably worth the sum of $10,000.

"7. I further find that after the property was advertised for sale and prior to the date of sale, July 2, 1940, the plaintiff, Mrs. Nellie C. Ferguson, had reached an understanding with a representative of the Great Southern Life Insurance Company to reduce the principal debt to $1700.-00 and to renew and extend the same; that she was anticipating and waiting for the return of the representative with the necessary renewal papers on the sale date, July 2, 1940; that she received notice of such sale but gave the matter no attention, because of the arrangement made for the extension and renewal of her debt.

"8. I further find that Milton Gilmer, the substitute trustee, was advised that the debt would be renewed and extended if reduced to $1700.00, and to renew the same upon such terms if approached by the plaintiff, Mrs. Nellie C. Ferguson; that the trustee, Milton Gilmer, did not know of the agreement had with the representative of the company by Mrs. Ferguson, nor did Mrs. Ferguson approach him on the matter of renewal prior to the date of the sale.

"9. I further find that Milton Gilmer, the trustee, had instructions from the company to cause some one to bid for it at the sale a sum not to exceed $1900.00; that he, immediately preceding the sale, requested Boss Miller, the janitor in the Court House building, to attend the sale and to bid on the property, but not in excess of $1900.00. He did not advise Boss Miller for whom he was to bid. There were no bidders at the sale other than Miller and J. W. Gilmer.

"10. Milton Gilmer, the trustee, had done abstract work over a period of years for the plaintiff, Mrs. Ferguson, and saw her more than once personally after the posting of notice of sale and prior to the day of sale, but never at any time advised her of the sale nor the hour when the same would take place; J. W. Gilmer, the trustee's father, had been advised by the trustee, on request, of the date and hour of sale and the maximum authorized to be bid for the company.

"11. I further find that the rents on the property are likely to be permitted to deteriorate and depreciate, and that likewise the property is of such character as to permit of easy alteration and change and depreciation and deterioration, and that the same should be retained and preserved in its present condition and available and subject to the present character of use and occupancy.

## "Conclusions of Law

"1. I conclude as a matter of law that the difference between the reasonable market value of the property on the date of sale and the price paid by the purchaser, is such as to constitute the price bid and paid inadequate.

"2. I further conclude that the facts are sufficient to sustain a finding of collusion and fraud and are, therefore, coupled with the inadequate price paid, sufficient to void the sale and authorize its cancellation and a restoration of the title to the plaintiff.

"3. I conclude further that the appointment of a receiver is advisable, if not necessary, and authorized to maintain the status quo of the property and to avoid the danger of alteration, depreciation and deterioration during the pendency of the suit and until such time as the cause may be tried on its merits."

Article 2293 of the Revised Statutes, 1925, is applicable to this controversy. One of the questions involved is as to which section of that article is applicable. Defendant's position is that section four thereof is the one applicable, which provides that a receiver may be appointed by a court of competent jurisdiction in all other cases where receivers have heretofore been appointed by the usages of a court of equity. Plaintiff's position is that section one of said article applies, the clause of said section one invoked being, "In an action by a vendor to vacate a fraudulent purchase of property; * * * whose right to or interest in the property or fund or the proceeds thereof is probable, and where it is

shown that the property or fund is in danger of being lost, removed or materially injured."

In our opinion this is an action by a vendor to vacate an alleged fraudulent purchase of property. If this be correct, two conditions under that article must be shown by the pleading and the proof: First, the right of plaintiff to the property involved is probable; second, that the property is in danger of being lost, removed or materially injured.

We shall first consider the case in the light of the second requisite.

Finding of fact number eleven by the trial court is as to this issue. This finding is excepted to by the defendant on the ground that same is unsupported by the evidence. We think it is clear that defendant was collecting the rents of the property and excluding plaintiff therefrom; further, that unless lis pendens notice were filed, it was in the power of defendant to convey same to an innocent purchaser and thus cause the loss of the property to plaintiff in the event she should prevail.

There is lacking from the statement of facts any evidence of probative force showing any change made or contemplated by defendant in the property; likewise, that the land or the structures thereon were being in any way abused or damaged.

If what we have said be correct, there are only two facts that would justify the appointment of a receiver: First, the possibility that the defendant might convey the property to an innocent purchaser; second, that defendant's depriving the plaintiff of the rents and appropriating same to his own benefit constitutes material injury to the property.

Anderson & Kerr ·Drilling Co. v. Bruhlmeyer, 134 Tex. 574, 136 S.W.2d 800, 127 A.L.R. 1217, is a case coming under Section 1 of Article 2293. It was there held it must be shown that the property or fund is in danger of being lost, removed or materially injured. There is no additional condition or requirement, as, for example, proof of insolvency of the defendant or that the plaintiff or other applicant for the appointment of the receiver has no other adequate remedy. Despite this holding, we cannot believe that the mere fact that the defendant might convey the property to an innocent purchaser would justify the appointment of a receiver. The

simple filing of a lis pendens notice would obviate entirely this injury. See Haywood v. Scarborough, 41 Tex.Civ.App. 443, 92 S.W. 815. In the case where the language above quoted was used, no such question was before the court. We believe that by "remedy" in that case was meant such remedy as sequestration or less drastic equitable remedy, such as injunction.

If this case comes within the provision of Section 1 of the article as to receivers, it must be from the fact that defendant is collecting the rents and appropriating same to his own use. We believe that we are correct in stating that in the briefs of counsel there is no precedent cited where the mere collection and appropriation of rents by the defendant in a suit for the recovery of land was held to justify a receiver under Section 1 of Article 2293. In the case of Anderson & Kerr Drilling Company v. Bruhlmeyer, supra, the appropriation of a portion of the oil to which plaintiffs showed themselves probably entitled was held sufficient. However, the oil, until severed, was a part of the land itself. Its withdrawal presumptively injured the land, in that it decreased its value. It was in a sense the taking of part of the land itself.

In a consideration of this question care must be taken to distinguish between a receivership justified under Section 1 and a receivership justified under Section 4. This distinction, as we understand it, is that if Section 4 of the statute in question is applicable, then, the pleading and proof must negative solvency and the existence of other adequate remedy. A court of equity may, of course, in a proper case, appoint a receiver where the suit is for the title to land, and regardless of whether it is by a vendor to vacate a fraudulent purchase, or that it be between partners or others jointly owning or interested in any property or fund. The function of the receiver may be to preserve the rents; but, to such a case, Section 4 of the article ordinarily applies. To justify a receivership under Section 1 it is necessary to show the property involved is in danger of being lost, removed or materially injured; if it be not shown, Section 1 does not apply. Where the suit is for the title to land, to justify the appointment of a receiver, the probable irreparable loss of the rents must appear, unless, of course, Section 1 applies.

In this case plaintiff alleges the insolvency of the defendant. Under oath this allegation is denied, and it is specially averred that defendant is possessed of property of the value of $50,000 in excess of all debts. There was no evidence as to the financial condition of the defendant. In such a case it would seem that a suit for the reasonable rental value of the property would afford ample remedy. Further, here it is admitted before plaintiff is entitled to the relief finally sought, she must account to defendant for $1,910.

We hold that in a suit to recover the title to land the mere appropriation of the rents therefrom, past or prospective, is not sufficient to constitute material injury to the land within the meaning of Section 1 of Article 2293. It follows, in our opinion, the trial court erred in appointing the receiver. Our disposition of this assignment renders it unnecessary to consider the assignment as to the evidence being insufficient to show that plaintiff's interest in the property is probable, within the meaning of Section 1 of the article in question. We refrain from a discussion thereof for the reason that this case is to be later tried on the merits.

It is ordered that the judgment of the trial court be reversed and rendered.

SUTTON, J., did not sit.